**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**Case No. _____**

IKSA EXIM, INC., a Florida corporation
and IZHAK KASHANI, an individual

    Plaintiff

vs.

LAWRENCE ALLOUCHE a/k/a LARRY
ALLOUCHE a/k/a LARRY ALUSH and
ARIEL LLC, a Pennsylvania limited liability
company,

    Defendants.

_____/

## <u>COMPLAINT AND JURY DEMAND</u>

  Plaintiffs, IKSA EXIM, INC., a Florida corporation ("**Iksa Exim**") and IZHAK

KASHANI ("**Kashani**", collectively with Iksa Exim, "**Plaintiffs**"), through undersigned counsel,

sue Defendants, LAWRENCE ALLOUCHE a/k/a LARRY ALLOUCHE a/k/a LARRY ALUSH

("**Allouche**") and ARIEL LLC, a Pennsylvania limited liability company ("**Ariel**", collectively

with Allouche, "**Defendants**"), and allege as follows:

## <u>PARTIES</u>

  1.  Iksa Exim is a Florida corporation with a principal place of business at 3981 194th

Lane, Sunny Isles Beach, FL 33160. For jurisdictional purposes, Iksa Exim is domiciled in the

State of Florida.

  2.  Kashani, is a natural person and sole shareholder of Iksa Exim, residing at 3981

194th Lane, Sunny Isles Beach, FL 33160.  For jurisdictional purposes, Kashani is domiciled in

the State of Florida.

3.      Allouche is an individual and resident of the Commonwealth of Pennsylvania with a personal and principal place of business in the Commonwealth of Pennsylvania, to wit: 32 Hirst Avenue, East Lansdowne, PA 19050.  For jurisdictional purposes, Allouche is domiciled in the Commonwealth of Pennsylvania.

4.      Ariel is a limited liability company with its principal place of business in the Commonwealth of Pennsylvania located at 32 Hirst Avenue, East Lansdowne, PA 19050. For jurisdictional purposes, Ariel is domiciled in the Commonwealth of Pennsylvania.

5.      At all times mentioned herein, Plaintiff is informed and believes that defendant Allouce was the sole and/or responsible member, principal and officer of Ariel, and both individually and in such capacity participated in a scheme to defraud Plaintiffs as set forth more fully below.

## JURISDICTION

6.       This Court has jurisdiction of this matter as the amount in controversy is greater than Seventy-Five Thousand Dollars ($75,000.00), exclusive of fees, interest and costs, and complete diversity exists between Plaintiffs on one hand and the Defendants on the other, pursuant to 28 U.S.C. §1332 (a).

## GENERAL ALLEGATIONS

7.      Allouce and Kashani were friends whose relationship originated in their childhood approximately twenty-seven (27) years ago in the Ramot Meir Village in Israel.

8.      After both emigrating to the United States approximately nine (9) years ago, they lost touch as Kashani settled to live in Miami, Florida and Allouche went to live in Philadelphia, Pennsylvania.

9.      In 2018, Allouche contacted Kashani for the first time since their separate arrival to the United States in 2011, under the pretext of a planned business trip to Florida and what was alleged to be a social "re-connection" for friends that had not seen each other in almost a decade.

10.     In hindsight, the "reconnection" was nothing more than a targeted, pre-planned scheme to defraud Kashani out of hundreds of thousands of dollars by getting him to invest in what Allouche represented was the purchase and rehabilitation of real properties (the "**Scheme**").

11.      To get Kashani primed and comfortable after losing contact for many years, over the span of several months Allouche began making frequent trips to Miami, Florida and "visiting" Kashani to ingratiate himself with Kashani's family, employees, and business associates.

12.     During each of his visits, and in furtherance of the Scheme, Allouce would get himself invited to Kashani's personal home, or visit and dine in one of Kashani's restaurants, making it appear to Kashani that their rekindled childhood "friendship" was growing stronger.

13.     After several months, Kashani's trust in his old "friend" Allouche was profound, and in or about November 2018, during a business trip Kashani took to New York, Allouche picked him up and drove him to Philadelphia to visit some purported real estate investments Allouche claimed to be involved in.

14.     During that trip, Allouche pitched the Scheme, which eventually involved the following real properties: (a) 32 Hirst Avenue, East Lansdowne, PA 19050 (the "**Hirst Avenue Property**"); (b) 223 S 60th Street, Philadelphia, PA 19139 (the "**60th Street Property**"); and (c) 5034 Tacoma Street, Philadelphia, PA 19144 (the "**Tacoma Street Property**") (collectively, the "**Properties**").

15.     Allouche represented that the purchase price was ninety thousand dollars ($90,000.00) per property for the Properties, for a total of $270,000.00.

16.     During the first visit to Philadelphia in 2018 and thereafter, Allouche began to aggressively sell the Scheme, using the "friendship" that had been rekindled to his advantage.

17.     For example, Allouche represented the rehabilitation of the Properties would easily be a more profitable business opportunity than the one Kashani had recently made in Michigan (which Kashani had disclosed to Allouche based on their perceived friendship).

18.     Allouche represented that the deal would be as follows:

a.   The Properties cost ninety thousand dollars ($90,000.00) each, for a total of two hundred seventy thousand dollars ($270,000.00);

b.   Expenses for repairs, restoration permits, and licenses would run approximately two hundred thirty-five thousand dollars ($235,000.00) for all the Properties, with a potential ten percent (10%) fluctuation; and

c.   After full rehabilitation, the refurbished Properties would be sold for a price in excess of four hundred thousand dollars ($400,000.00) each, based on the current market and taking into consideration that Philadelphia is one hour from Manhattan by train and many people work in Manhattan but live in Philadelphia since the cost of living is cheaper than in New York City.

19.     Based on the foregoing, Allouche represented that Kashani could buy into the project for a $505,000.00 investment, and the first of the Properties would be ready by the end of 2019.

20.     Allouche represented that he needed funds, which would be used to fully pay for the Properties and for the rehabilitation.

21.     After Allouche rekindled the childhood "friendship" with Kashani, and put on a show taking Kashani to see the Properties for rehabilitation, all that was left was to finalize a deal.

22.     The final coup-de-grace was when Allouche proposed using "Ariel LLC" for the venture, because that is Kashani's son's name, and asked Kashani to transfer the funds to Ariel's bank account during the rehabilitation process in 2019.

23.     Kashani and Allouche ultimately agreed as follows:

a.  Kashani and Allouche would be 50/50 member of Ariel LLC;

b.  The Properties would be purchased and transferred to Ariel LLC;

c.  Kashani would cause his company, Iksa Exim, to loan the capital required to complete the purchase and rehabilitate the Properties to Ariel;

d.  The loan(s) from Iksa Exim would be interest free and secured by a mortgage on the Properties or the member equity interests in Ariel;

e.  Because Kashani was causing his solely owned company, Iksa Exim, to provide an interest free loan to Ariel, which would finance the entire project, Allouche would manage and oversee the project;

f.  Upon sale of the Properties, after repayment of the loan(s) to Iksa Exim, Allouche would split the remaining profits 50/50.

24.     To strengthen the purported bond between them and ensure Kashani would cause Iksa Exim to fund the proposed deal, Allouche then suggested he lease one of Kashani's investment properties so Allouche could have a place to stay in Miami. Allouche's reasoning was based on the fact that he planned on frequently flying between Florida and Pennsylvania to see his "friend" and now business partner Kashani.

25.     Kashani was leasing the house out for five thousand dollars ($5,000.00) per month, but agreed to lease it to Allouche for $2,500.00 per month based on their "friendship" and "business relationship."

26.     Allouche represented that he would take the initiative to ensure that the agreement reached with Kashani would be written and prepared by his attorney and – subject to Kashani's review, revision and approval – they would sign it.

27.     The Scheme was now complete, except for getting Kashani to fund as a result of Allouche's false representations as more particularly identified herein.

28.     Allouche became unwilling to wait until the paperwork was complete and began to put pressure on Kashani to cause the funds to be transferred, insisting that the timeframe to complete the purchase and rehabilitation of the Properties was urgent and the advantageous position they were in would be lost if the funds were not immediately received.

29.     Unfortunately, having fallen prey to Allouche's Scheme, over the course of approximately one (1) year Kashani caused his entity, Iksa Exim, to transfer the following funds requested by Allouche in furtherance of the business venture:

|      |                   |   |             |
|------|-------------------|---|-------------|
| i)   | February 20, 2019 | - | $ 150,000.00 |
| ii)  | May 1, 2019       | - | $  70,000.00 |
| iii) | June 11, 2019     | - | $  80,000.00 |
| iv)  | August 8, 2019    | - | $  50,000.00 |
| v)   | August 29, 2019   | - | $  30,000.00 |
| vi)  | October 2, 2019   | - | $  50,000.00 |
| vii) | November 13, 2019 | - | $  30,000.00 |
| viii)| December 24, 2019 | - | $  15,000.00 |

30.     In addition to the foregoing wires totaling four hundred seventy-five thousand dollars ($475,000.00), as part of the monies being loaned by Kashani through his entity Iksa Exim, an additional thirty-thousand dollars ($30,000.00) at Allouche's request was given to an individual named Yossi Meiri to finalize payment of the Properties, bringing the total funds loaned to Five Hundred Five Thousand Dollars ($505,000.00) (the "**Loan**").

31.     During the entire year that Kashani was causing Iksa Exim to loan funds in furtherance of the business venture, in order to ensure Kashani caused Iksa Exim to continue

funding, Allouche continued making his misrepresentations relating to the Properties, including that everything with the rehabilitation as to *all the Properties* was going as planned and that he was handling everything with regard to the Properties. In reality, from the outset Allouche never intended to use the funds for the purpose he was representing, never intended to make Kashani a 50/50 member in Ariel, and never intended to repay the funds loaned by Iksa Exim.

32.     Kashani made multiple attempts to get Allouche to provide the promised agreements memorializing the loan and business terms of the venture, but Allouche repeatedly contrived excuses as to why the agreements were delayed and could not be provided.

33.     Finally, Allouche sent Kashani a proposed agreement that did not at all track the agreement that had been reached between them.

34.     When confronted by Kashani as to why the proposed agreement failed to accurately reflect almost *all* material terms agreed upon, Allouche reaffirmed the agreement, blamed it on his attorney, and claimed his attorney "probably" missed some details.

35.     Allouche then promised Kashani he would have his attorney revise the draft agreement to reflect the agreed upon terms, however, the text of the revised agreement again failed to contain the terms agreed between Kashani and Allouche.

36.     Allouche remained evasive as to why his attorney could not adequately memorialize the agreed terms and began trying to manipulate the situation and convince Kashani that no written agreement was necessary as everything was "just fine" and Kashani "had nothing to worry about."

37.     Unfortunately, in retrospect, Kashani believed Allouche at each turn based on the rekindled childhood "friendship."

38.     In furtherance of the continuing Scheme, playing on the rekindled "friendship," and

to ensure Kashani would continue to cause Iksa Exim to fund the alleged business venture, Allouche flew to Miami under the guise of spending time with his "friend" to make sure Kashani was still under his spell to avoid the immediate uncovering of the Scheme.

39.     Having temporarily convinced Kashani that he had nothing to worry about, despite repeated promises and excuses as to why an agreement was on its way, Allouche continued failing to provide a written agreement to Kashani.

40.     Thereafter, in or about December 2019, Kashani discovered that Allouche, without any prior consent, authorization, or discussion, fraudulently transferred One Hundred and Sixty Thousand Dollars ($160,000.00) of the Loan made by Iksa Exim to Ariel LLC into a different project in Philadelphia.

41.     It was later discovered that the unknown project consisted of Allouche contracting with the City of Philadelphia to house people with disabilities.

42.     This was in complete contravention of Allouche's representations, was a business never discussed, and the loan funds provided by Kashani through Iksa Exim were never supposed to be used for anything along these lines.

43.     The deal between Kashani and Allouche was strictly for the purchase, rehabilitation, and flipping of the Properties.

44.     At this point, Kashani realized became extremely concerned.

45.     Kashani demanded bank account access to the Ariel LLC account, as well as to review other records relating to the ongoing rehabilitation projects, which was denied by Allouche.

46.     Under the guise of furthering the purchase and rehabilitation of the Properties, Allouche was able to manipulate and temporarily convince Kashani that all would be resolved, and on December 24, 2019, Kashani caused Iksa Exim to make the last wire transfer for $15,000.00

toward the Loan.

47.     Shortly after the final wire was received, realizing he had squeezed everything he could out of Kashani, Allouche's behavior toward Kashani abruptly changed, Kashani began to realize that the business and personal relationship between he and Allouche had spiraled into an irreversible decline, and that his childhood "friend" had been tricking him all along.

48.     Kashani began to discover the true nature of Allouche's actions and the Scheme.

49.     Contrary to Allouche's representations, Allouche had purchased the 60th Street Property for only $30,000.00, and the Tacoma Street Property for only $6,000.00, both significantly less than the represented amount in the $90,000.00s.

50.     Moreover, Allouche never transferred title to the Hirst Avenue Property or the Tacoma Street Property to Ariel, nor did Allouche ever intend to do so. To date, almost two (2) years after Kashani and Allouche agreed to the business venture, Allouche refuses to make Kashani a member of Ariel (the company named after Kashani's own son), Ariel owns a single, unrenovated property despite Iksa Exim's transfer of over $500,000 to Ariel, and Allouche refuses to return the funds or provide any documents as to where the funds are.

51.     Moreover, upon information and belief, Allouche was using the Loan funds for the rehabilitation of the Properties to instead pay Kashani for the house he was leasing from Kashani – albeit at half the market rent – in Miami.

52.     Upon demand by Kashani, Allouche refused to return the funds wrongfully obtained, and also refused to execute any contractual agreements between the parties by which the Loan would be secured and through which Kashani and Iksa Exim would be paid upon sale of each of the Properties, instead insisting Kashani take no action through September 2020, at which time Allouche would ensure all of the Loan funds would be repaid. Kashani stated that he would

only refrain from taking action if Allouche formally memorialized the agreement as promised, and agreed to pay 1% interest on the Loan. Instead, Allouche said to give him the weekend to think about it but thereafter went missing in action.

53.     As of this filing, Allouche not only made no progress whatsoever in either providing a written contract or repaying the stolen monies, he has failed and/or refused to pay four (4) months of the reduced rent for the house he leased from Kashani in Miami.

54.     When advised by Kashani that he would be subject to a summary proceeding for eviction for failing to pay the necessary rent, Allouche became aggressive, disrespectful, and made threats toward Kashani.

55.     In mid-April 2020, Allouche surrendered and vacated the Miami house owing rent for the months of January through April 2020, but also threatened Kashani that he would destroy his life and marriage if Kashani would take any legal action against him.

56.     To date, Allouche has continued to maintain dominion and control over the converted and fraudulently obtained Loan funds, has continued to use them for his own pecuniary gain to Plaintiffs' detriment, and has refused to return the Loan funds.

57.     Ariel was nothing other than a company created through which Allouche could conduct his Scheme.

58.     Allouche is liable under an alter ego theory because he dominated and controlled Ariel to such an extent that Ariel's independent existence was in fact non-existent.

59.     Ariel was used as Allouche's personal piggy bank, whereby Allouche tricked Kashani into transferring funds, through Iksa Exim, and Allouche would use those funds however he saw fit, including to bank roll his lifestyle and other ventures.

60.     All conditions precedent to the maintenance of this action have been performed by

Plaintiff or have otherwise occurred, been performed, or have been waived.

61.     Plaintiff has retained the undersigned law firm and is obligated to pay said firm reasonable attorneys' fees for its services.

## COUNT I
### (Breach of Contract)

62.     Kashani repeats and realleges the allegations set forth in paragraphs 1 through 61 as if set forth fully herein.

63.     Kashani and Allouche entered into an agreement related to the Properties as set forth in detail herein, whereby the Properties would be owned by Ariel and Kashani and Allouche would each have a 50% interest in Ariel.

64.     Kashani caused his entity Iksa Exim to provide the Loan to Ariel.

65.     Allouche repeatedly affirmed and ratified the terms of the agreements between him and Kashani, and kept Kashani apprised of the alleged rehabilitation.

66.     Despite Kashani living up to his end of the bargain, Allouche failed to manage the rehabilitation, failed to rehabilitate the Properties, refused to transfer title to the Hirst Avenue Property and Tacoma Street Property to Ariel, failed to use the Loan funds as agreed, and refuses to make Kashani a 50% member in Ariel.

67.     Kashani has suffered damages due to Allouche's breaches.

**WHEREFORE**, Plaintiff, IZHAK KASHANI, respectfully requests judgment in his favor and against Defendant, LAWRENCE ALLOUCHE a/k/a LARRY ALLOUCHE a/k/a LARRY ALUSH, in an amount to be determined at trial, including but not limited to interest, attorneys' fees, and costs, together with such other and further relief that this Court deems just and proper.

## COUNT II
### (Breach of Contract)

68.     Iksa Exim repeats and realleges the allegations set forth in paragraphs 1 through 61 as if set forth fully herein.

69.     Iksa Exim and Ariel entered into an agreement whereby Iksa Exim was to provide the Loan to Ariel, and Ariel was to use the Loan to complete the purchase and rehabilitation of the Properties.

70.     The Loan was to be secured by the Properties and/or the member equity interests in Ariel.

71.     Ariel failed to use the Loan for its intended purpose and has otherwise failed to repay the Loan.

72.     Iksa Exim has been damaged by Ariel's breaches of the agreement.

73.     Allouche is liable through the theory of alter ego as set forth herein.

**WHEREFORE**, Plaintiff, IKSA EXIM, INC., respectfully requests judgment in its favor and against Defendants, ARIEL LLC and LAWRENCE ALLOUCHE a/k/a LARRY ALLOUCHE a/k/a LARRY ALUSH, in an amount to be determined at trial, including but not limited to interest, attorneys' fees, and costs, together with such other and further relief that this Court deems just and proper.

## COUNT III
### (Fraud in the Inducement)

74.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 61 as if set forth fully herein.

75.     Allouche made multiple material, fraudulent misrepresentations to Kashani, both individually and as a shareholder and officer of Iksa Exim, including but not limited to, as more specifically set forth in paragraphs 10, 15, 17 through 20, 28, 31, 42, 49, 50, 51, 57, and 59.

76.     Allouche knew or should have known that the representations made to Kashani and Iksa Exim were false at the time they were made.

77.     Allouche intended that these misrepresentations would induce Kashani into entering into the agreement and cause Iksa Exim to provide the Loan to Ariel, knowing full well that he would not perform or fulfill the promises made to induce Kashani to enter into the agreement and cause Iksa Exim to provide the Loan.

78.     At the time these representations were made by Allouche, Kashani was ignorant of their falsity and believed them to be true.

79.     Kashani and Iksa Exim were in fact induced as a result of Allouche's misrepresentations set forth herein to enter into the Agreement and cause Iksa Exim to wire the Loan funds.

80.     As a direct and proximate result of Kashani and Iksa Exim's detrimental reliance on the fraudulent misrepresentations of Allouche, Plaintiffs have suffered pecuniary damages in an amount to be determined at trial.

81.     The aforesaid malicious acts, understanding and design by Allouche and Ariel were committed with malice, were of a tortuous character, and done knowingly and willfully to the detriment of Plaintiffs, that is, committed with a state of mind characterized by a conscious disregard for the rights of Plaintiffs that had a great probability of causing substantial financial harm.

82.     The aforesaid acts and/or omissions constituted aggravated fraud, that is, accompanied by the existence of malice or ill will or egregious fraud, in that the fraudulent wrongdoing was particularly gross.  Accordingly, the Plaintiffs are entitled to an award of punitive damages to be determined at trial.

83.     Ariel is vicariously liable for the acts of Allouche, its agent, manager, and member.

84.     Based on the foregoing, Plaintiffs demand judgment against Allouche and Ariel, in an amount to be determined at trial, but not less than Five Hundred Five Thousand Dollars ($505,000.00).

**WHEREFORE**, Plaintiffs, IKSA EXIM, INC. and IZHAK KASHANI, respectfully request judgment in their favor and against Defendant, ARIEL LLC and LAWRENCE ALLOUCHE a/k/a LARRY ALLOUCHE a/k/a LARRY ALUSH, in an amount to be determined at trial, but not less than Five Hundred Five Thousand Dollars ($505,000.00), plus interest, attorneys' fees, and costs, and an award of punitive damages, together with such other and further relief that this Court deems just and proper.

## COUNT IV
### (Constructive Trust)

64.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 61 as if set forth more fully herein.

65.     Through the terms of the Agreement and his position as manager, member, and agent of Ariel LLC, Allouche undertook express, affirmative duties to act for the benefit of Iksa Exim and Kashani.

66.     Plaintiffs relied on Allouche's covenants when Iksa Exim wired the Loan funds to Ariel LLC to purportedly enable the company to purchase of and develop the Properties.

67.     Ariel LLC received the funds comprising the Loan from Iksa Exim and used a small portion of the funds to purchase one of the Properties, but at the direction of Allouche has failed to abide by the terms of the Agreement with Plaintiffs as to the development, construction and sale of the Properties, and has failed to disclose critical and material financial facts to Plaintiffs or permit a proper accounting of the company's books and records.

68.     Defendants' continued wrongful action relating to the Properties will likely result in a sale or refinance to line Allouche's pockets as sole member of Ariel and/or owner of the Properties, which will eliminate all further equity and value in the Properties and a source of recovery for Iksa Exim's Loan.

69.     Thus, Plaintiffs fear that without relief from the Court the equity in the Properties, which was intended to secure the Loan, will continue to disappear thereby diluting or eliminating Iksa Exim's now unsecured interest in the Properties.

70.     Equity and fairness demand that this Court impose a constructive trust in Plaintiffs' favor on the Properties, all funds or other proceeds received by Ariel LLC from the lease or sale of the Properties, the shares of Ariel LLC, and any interest or proceeds from Allouche's side venture described in paragraphs 40-42, to prevent a potential lien or encumbrance terminating or diluting Plaintiffs' interests.

**WHEREFORE**, Plaintiffs, IKSA EXIM, INC. and IZHAK KASHANI, respectfully request the Court impose a constructive trust for their benefit as set forth herein, together with such other and further relief that this Court deems just and proper.

<u>**COUNT V**</u>
(**Civil Conspiracy to Commit Fraud**)

71.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 61 and 74 through 84 as if set forth fully herein.

70.     As alleged herein, Allouche and Ariel knowingly and willingly conspired between themselves to hinder, delay, and defraud Plaintiffs in the Scheme to obtain the Loan and use it for their own pecuniary gain.

71.     Specifically, Allouche and Ariel knowingly and willfully agreed among themselves to abscond with funds from the Loan without providing Iksa Exim the benefit of the security it was promised as well as used the Loan funds for unauthorized and unrelated business investments without Plaintiffs knowledge or consent.

72.     In furtherance of the conspiracy and the Scheme, Allouche contacted and made numerous false representations to Kashani, both individually and as a shareholder and officer of Iksa Exim, as set forth in 10, 15, 17 through 20, 28, 31, 42, 49, 50, 51, 57, and 59.

73.     However, despite these specific representations, Allouche and Ariel never intended to spend $505,000.00 to finalize the purchase and rehabilitate the Properties.

74.     In fact, the purchase of the Properties cost a fraction of the represented amount required, title to two of the Properties was never transferred to Ariel, and it was always Allouche and Ariel's fraudulent intention to inflate the amount of the projected "expenses" and use Iksa Exim's Loan amount for his own unauthorized purposes and enrich himself and Ariel to the pecuniary detriment of Plaintiffs.

75.     Based on these willful and direct acts and/or omissions of Defendants, Plaintiffs agreed to the terms of the Agreement and Iksa Exim provided the Loan to Defendants by wire to Ariel.

76.     Subsequent thereto, Defendants in a continuation of their conspiracy to damage Plaintiffs, purposely engaged in deceptive and fraudulent practices which knowingly, intentionally, and willfully caused Plaintiff Iksa Exim to suffer losses of at least Five Hundred

Five Thousand Dollars ($505,000.00), while simultaneously using or diverting said monies for their own nefarious purposes.

77.     Each of Defendants have wrongfully benefited from their direct and malicious actions by wrongfully obtaining, using, diverting, and withholding the Loan monies that were to be used only for the terms of the Agreement and returned with the promised profit to Iksa Exim.

78.     The aforesaid malicious acts, understanding and design by Defendant Allouche by and through Ariel were committed with malice and were of a tortuous character and done knowingly and willfully to the detriment of Plaintiff, that is, committed with a state of mind characterized by a conscious disregard for the rights of Plaintiffs that had a great probability of causing substantial financial harm.

79.     The aforesaid acts and/or omissions constituted aggravated fraud, that is, accompanied by the existence of malice or ill will or egregious fraud, in that the fraudulent wrongdoing was particularly gross.  Accordingly, the Plaintiffs are entitled to an award of punitive damages to be determined at trial.

80.     Consequently, Plaintiffs requests that Allouche and Ariel, be held jointly and severally liable to Plaintiff in an amount to be determine at trial but not less than Five Hundred Five Thousand Dollars ($505,000.00).

**WHEREFORE**, Plaintiffs, IKSA EXIM, INC. and IZHAK KASHANI, respectfully request judgment in their favor and against Defendant, ARIEL LLC and LAWRENCE ALLOUCHE a/k/a LARRY ALLOUCHE a/k/a LARRY ALUSH, jointly and severally, in an amount to be determined at trial but in a sum no less than Five Hundred Five Thousand Dollars ($505,000.00), plus interest, attorneys' fees and costs, and an award of punitive damages, together with such other and further relief that this Court deems just and proper.

## COUNT VI
### (Negligent Misrepresentation)

81.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 61 as if set forth fully herein.

82.     Allouche, individually and in his role as representative of Ariel, made the misrepresentations set forth in paragraphs 10, 15, 17 through 20, 28, 31, 42, 49, 50, 51, 57, and 59, which he should have known were false.

83.     Allouche intended to induce the Plaintiffs to rely on the misrepresentations.

84.     In direct and proximate reliance on the representations of Allouche, Plaintiff Kashani accepted the terms of the Agreement and caused Iksa Exim to fund the Loan of Five Hundred Five Thousand Dollars ($505,000.00).

85.     The aforesaid representation and/or concealment of facts by Defendant Allouche, were material to the acceptance of the Agreement and funding of the Loan by Iksa Exim through which Ariel and Allouche were able to obtain the monies comprising the Loan.

86.     The aforementioned representations and/or concealment of facts by Defendant Allouche were made with the intent of misleading Plaintiffs into relying upon said representations or omissions.

87.     Plaintiffs have been injured and the injury was proximately and directly caused by the reliance on said representations and/or the absence of concealed facts made by Defendant Allouche.

88.     As a direct and proximate result of Defendant Allouche's misrepresentations, Plaintiffs have suffered damages in an amount not less than Five Hundred Five Thousand Dollars ($505,000.00).

89.     Ariel is vicariously liable for the acts of Allouche, its agent, member, and manager.

**WHEREFORE**, Plaintiffs, IKSA EXIM, INC. and IZHAK KASHANI, respectfully request judgment in their favor and against Defendant, ARIEL LLC and LAWRENCE ALLOUCHE a/k/a LARRY ALLOUCHE a/k/a LARRY ALUSH, in an amount to be determined at trial, but no less than Five Hundred Five Thousand Dollars ($505,000.00), with statutory interest from the date(s) of loss suffered by Plaintiffs and the costs and disbursements of this action, as well as such other and further relief as this Court deems just and proper.

## COUNT VII
**(Unjust Enrichment)**

90.     Iksa Exim repeats and realleges the allegations set forth in paragraphs 1 through 61 as if set forth fully herein.

91.     Iksa Exim provided a benefit to Defendants, to wit; monies wired or delivered to Ariel and its sole member Allouche in the amount of a Five Hundred Five Thousand Dollars ($505,000.00), as set forth in paragraphs 29 and 30.

92.     Defendants' use of the benefit conferred by Iksa Exim constitutes an unjust enrichment to Ariel and Allouche.

93.     Under the circumstances Ariel and Allouche's retention of the benefit conferred by Iksa Exim would be inequitable unless Ariel and Allouche repay Iksa Exim the value of said benefit in full plus interest at the statutory rate.

94.     As a result of the unjust enrichment of Defendants, Plaintiff Iksa Exim has been damaged and demands judgment against Defendants, jointly and severally, in the amount of Five Hundred Five Thousand Dollars ($505,000.00).

**WHEREFORE**, Plaintiff, IKSA EXIM, INC., respectfully requests judgment in its favor and against Defendant, ARIEL LLC and LAWRENCE ALLOUCHE a/k/a LARRY ALLOUCHE a/k/a LARRY ALUSH, jointly and severally, in an amount to be determined at trial, but no less

than Five Hundred Five Thousand Dollars ($505,000.00) with statutory interest from the date(s) of loss suffered by Iksa Exim, plus costs and disbursements of this action.

## COUNT VIII
## (Breach of Fiduciary Duty)

95.     Plaintiffs repeat and reallege paragraphs 1 through 61 as if fully set forth herein.

96.     Allouche owed fiduciary duties of care and loyalty to Plaintiffs based on the confidence and trust Plaintiffs reposed in Allouche.

97.     Allouche accepted the trust and confidence reposed in him by Plaintiffs by repeatedly assuring Plaintiffs that everything was in order as to the Properties, that the rehabilitation was going well as scheduled, and that he was managing all aspects.

98.     In fact, as set forth in more detail *supra*, Allouche did more than accept the trust and confidence. Allouche went out of his way to cultivate trust and confidence based on his childhood friendship with Kashani, made numerous trips to Miami to build that trust and confidence, and generally played on Kashani's "friendship" with him knowing exactly how to manipulate Kashani.

99.     Allouche breached his fiduciary duties by: (a) making the misrepresentations set forth herein; (b) failing to manage the buildout as promised; (c) tricking Kashani to cause Iksa Exim to loan funds, which Allouche used for his own personal benefit; (d) and cutting Kashani out of the deal that he tricked Kashani to fund in the first place.

100.    As a direct result of these breaches of fiduciary duty, Plaintiffs have been damaged.

## COUNT IX
## (Declaratory Judgment)

101.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 61 as if fully set forth herein.

102.    Kashani and Iksa Exim have asserted that they entered into the agreements, which included Iksa Exim agreeing to make the Loan in exchange for security.

103.    Plaintiffs attempted to obtain a written agreement, however, Allouche continued making excuses or providing drafts with completely different terms.

104.    Allouche refuses to provide Kashani and Iksa Exim access to the books and records of Ariel, and refuses to sign any agreement that formally shows Kashani as a member of Ariel, and therefore Allouche is improperly exercising sole control over Ariel.

105.    There is a bona fide, actual, present practical need for a declaration as to whether the agreement between the parties.

106.    Such declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts, namely, whether the relevant parties entered into a valid and binding agreement.

107.    Some immunity, power, privilege or right of Kashani and Iksa Exim is dependent upon the facts or law applicable to the facts, specifically, that Kashani is a 50% member of Ariel.

108.    Plaintiffs reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in law or fact, with Defendants.

109.    The antagonistic and adverse interests are all before the court by proper process.

110.    The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded for curiosity.

**WHEREFORE**, Plaintiff, IZHAK KASHANI, respectfully request that the Court declare that he is a 50% member of ARIEL LLC.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.


Dated: July 30, 2020

<div style="margin-left:40%;">

Respectfully Submitted,

THE BERNSTEIN LAW FIRM
*Attorneys for Plaintiffs*
3050 Biscayne Boulevard, Suite 403
Miami, Florida 33137
Tel. (305) 672-9544
Fax (305) 672-4572
michael@blfmiami.com
jordan@blfmiami.com
paralegal@blfmiami.com


*s/Michael I. Bernstein*
**Michael I. Bernstein**
Florida Bar No. 546208
**Jordan C. Kaplan**
Florida Bar No. 98618

</div>